IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION<br>NO. 93-264 |
| v. | |
| AMIN A. RASHID | CIVIL ACTION<br>NO. 12-5313 |

DuBOIS, J.                                                                                                  August 22, 2014

# M E M O R A N D U M

## I. Introduction

This case arises out of defendant's conviction, by a jury, on December 27, 1993. Presently before the Court is Ground Three of defendant's *pro se* Habeas Corpus Petition Under 28 U.S.C. § 2241 [hereinafter § 2241 Petition], in which defendant asserts that the Supreme Court decision in *United States v. Santos*, 553 U.S. 507 (2008) rendered his conduct non-criminal. For the reasons that follow, defendant's § 2241 Petition is denied with respect to defendant's remaining claim, Ground Three.

## II. Background and Procedural History

On May 20, 1993, a grand jury in this District returned an Indictment against defendant, charging him with thirty-two counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of mail fraud in violation of 18 U.S.C. § 1341, thirteen counts of money laundering in violation of 18 U.S.C. § 1957(a), and nine counts of laundering proceeds of unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(2). The Indictment stated that defendant used aliases and corporate entities he owned, including Amin A. Rashid and Associates ("AAR") and SEMCO Capital Corporation ("SEMCO"), to defraud potential borrowers. Indictment ¶¶ 1, 2, 5. Specifically, the Indictment charged that defendant solicited customers seeking sizable commercial loans, *id.* ¶ 6,

and defendant signed "consulting agreements" with those customers obligating him to use his "best efforts" to secure financing from an alleged lending source, usually one of the corporate entities that defendant owned, such as SEMCO, *id.* ¶¶ 9, 10.  The Indictment also charged that defendant, through SEMCO or another corporate entity he owned, then required payment of "advance fees" for financing that he did not intend to obtain.  *Id.* ¶ 12, 16.

During closing arguments at defendant's trial, the government argued to the jury that it had proven money laundering beyond a reasonable doubt because "money received from a victim" was used "to pay the salaries of SEMCO employees," Trial Tr., December 23, 1993, at 49, and that defendant used "accounts not only of SEMCO, but of [AAR] to pay for the office and the office rent for the other company that he controlled, Capital Guarantee," *id.* at 48.

On December 27, 1993, following a jury trial, defendant was found guilty of thirty counts of wire fraud, two counts of mail fraud, thirteen counts of money laundering, and eight counts of laundering proceeds of unlawful activity.  On May 17, 1994, defendant was sentenced to, *inter alia*, 168 months of imprisonment and three years of supervised release.

Defendant filed the *pro se* § 2241 Petition on September 17, 2012.  That Petition asserted three grounds for relief: (1) the trial court lacked jurisdiction to convict and sentence defendant due to its amendment of the Indictment; (2) the Indictment expired when it was amended; and (3) the Supreme Court decision in *United States v. Santos*, 553 U.S. 507 (2008) rendered defendant's conduct non-criminal.  By Order dated December 21, 2012, the Court dismissed that Petition on the ground that it "raise[d] only issues that have been raised and rejected by this Court and the Court of Appeals."

On January 25, 2013, defendant filed Petitioner Amin A. Rashid's Certified Motion for Leave of Court to File a Section 2241 Petition, which sought permission to refile defendant's

§ 2241 Petition. That procedure was required by Order dated January 4, 2013 because of the numerous frivolous and repetitive motions filed by defendant. Pursuant to that Order, defendant certified that the claims he wished to present were new claims never before raised and disposed on the merits by a federal court. By Order dated February 19, 2013, the Court denied that Motion with respect to Grounds One and Two on the ground that defendant previously had raised those claims in a Rule 60(b) Motion, which the Court denied on the merits by Order dated January 3, 2011. The Court deferred ruling on Ground Three of that Motion and ordered the government to file a response addressing "the details of the Government's argument that Ground Three has been previously raised [by defendant]." Order dated February 19, 2013, ¶ 8.

By Order dated March 22, 2013, the Court granted Petitioner Amin A. Rashid's Certified Motion for Leave of Court to File a Section 2241 Petition with respect to Ground Three. Defendant's § 2241 Petition was deemed filed with respect to Ground Three as of September 17, 2012, the date on which the § 2241 Petition was initially filed. The Court addresses the issues raised in Ground Three below.

**III. Discussion**

Defendant argues in Ground Three of the § 2241 Petition that the Supreme Court's interpretation of the money laundering statute in *United States v. Santos*, 553 U.S. 507 (2008) rendered the conduct that formed the basis for his money laundering convictions non-criminal. Specifically, defendant argues that his convictions for money laundering should be vacated because *Santos* required that laundered "proceeds" be derived from criminal profits, and his convictions were based on the use of the laundered proceeds to pay the expenses of his crimes, such as rent and employee salaries. The Court has jurisdiction to consider Ground Three pursuant to 28 U.S.C. § 2241. *Abuhouran v. Grondolsky*, 643 F. Supp. 2d 654, 656 (D.N.J.

3

2009), *aff'd* 392 F. App'x 78, 79 n.1 (3d Cir. 2010); *accord Garland v. Roy*, 615 F.3d 391, 404 (5th Cir. 2010).

### A. The *Santos* Decision

The defendants in *Santos* ran an illegal lottery, in which the bettors bought tickets and paid "runners," who took a percentage of the wagers as commission and passed the remaining money to "collectors." 553 U.S. at 509. The manager of the illegal lottery would then pay the winners and the salaries of the collectors. *Id.* The payments to runners, collectors, and winners "formed the basis" for both defendants' convictions of, *inter alia*, running an illegal gambling business in violation of 18 U.S.C. § 1955, and money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). *Id.* at 509–10. The defendants collaterally attacked their conviction for money laundering, asserting that the term "proceeds" in federal money laundering statutes means criminal profits rather than criminal receipts. *Id.* at 510.

The Supreme Court issued a plurality opinion that resulted in no clear rule of law. That opinion, written by Justice Scalia, stated that the term "proceeds" in the money laundering statutes was ambiguous and could mean either profits or gross receipts. 553 U.S. at 513–14. Justice Scalia then held that the rule of lenity required that the word "proceeds" be given the more restrictive definition, that of profits, *id.* at 514, and that the defendants' convictions for money laundering should be vacated because they were convicted "based on [] payments to the lottery winners and [] employees" rather than the profits of an illegal gambling business, *id.* at 524.

Justice Stevens wrote the concurring opinion, which provided the fifth vote for the plurality, in which he stated that the word "proceeds" had different meanings when applied to different "specified unlawful activities" in a money laundering offense. *Id.* at 525. In the

absence of legislative history relating to a specific "unlawful activity," Justice Stevens said in his opinion that "proceeds" should mean profits when the contrary interpretation would create what he termed a "merger problem" with the "unlawful activity" that generated the "proceeds." *Id.* at 526–27.  Although the "merger problem" is never precisely defined, Justice Stevens stated that "[a]llowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy . . . ." *Id.* at 527.

> The revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute.  As the plurality notes, there is 'no explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code, to radically increase the sentence for that crime.'

*Id.* at 528.

### B. Definition of "Proceeds"

When "no single rationale explaining the result enjoys the assent of five Justices," the holding of a case is limited to the narrowest grounds supporting the result.  *Marks v. United States*, 430 U.S. 188, 193 (1977).  The government argues that *Santos* should be construed narrowly to stand for the proposition that "proceeds" means profits only when the "specified unlawful activity" underlying a money laundering offense is running an illegal gambling business in violation of 18 U.S.C. § 1955.

The Court rejects the government's argument on that issue and concludes that "proceeds" also means profits when the "specified unlawful activity" underlying a money laundering offense is wire fraud, in violation of 18 U.S.C. § 1343, or mail fraud, in violation of 18 U.S.C. § 1341. *See United States v. Yusuf*, 536 F.3d 178, 182 (3d Cir. 2008).  In *Yusuf*, the defendant was convicted of mail fraud, tax evasion, and international money laundering.  The Third Circuit

5

stated in *Yusuf*, in broad language, that "the term 'proceeds,' as that term is used in the federal money laundering statute, applies to criminal profits, not criminal receipts, derived from a specified unlawful activity." *Id.* at 185. The Third Circuit's holding in *Yusuf* was narrowed in later opinions, but those opinions do not change the applicability of *Yusuf* to the crimes at issue in this case. *See, e.g.*, *United States v. Richardson*, 658 F.3d 333, 340 (3d Cir. 2011) (clarifying that "five justices agreed in *Santos* that 'proceeds' means gross receipts in cases involving the sale of drugs and other contraband"). Thus, the government's narrow interpretation of *Santos* is foreclosed, and the Court also defines the term "proceeds" as profits when the "unlawful activity" is mail fraud, tax evasion, or other similar offenses.

**C. Definition of Profits**

The Court must next define the "profits" of mail and wire fraud. The elements necessary to establish the offense of mail fraud are (1) a scheme or artifice to defraud for the purpose of obtaining money or property and (2) use of the mails in furtherance of the scheme. *Yusuf*, 536 F.3d at 187. The elements necessary to establish the offense of wire fraud are (1) "knowing and willful participation in a scheme or artifice to defraud," (2) "with specific intent to defraud," and (3) use of "interstate wire communications in furtherance of the scheme." *United States v. Andrews*, 681 F.3d 509, 518 (3d Cir. 2012).

The question is whether "proceeds" means profits from the artifice or scheme to defraud or profits from use of the mail or an interstate wire communication. Defendant argues that "proceeds" means profits from the scheme or artifice to defraud. If defendant is correct, then his conviction for money laundering must be vacated because, at defendant's trial, the government argued that defendant's expenses in running his businesses, such as payment of employees and rent, constituted evidence of money laundering.

The Court rejects defendant's argument on the definition of "profits" and concludes that "profits" from mail and wire fraud are the payments from the victims less the expense of the mail or wire communications.  *See Abuhouran*, 643 F. Supp. 2d at 669, *aff'd* 392 F. App'x at 81.  In *Abuhouran*, the defendant engaged in a series of bank frauds to support an underlying construction company.  643 F. Supp. 2d at 667.  The defendant in *Abuhouran* argued that *Santos* required the government to prove that the underlying construction company was profitable, which it was not.  *Id.*  The district court rejected that argument and held that "when the Hourans, through their manifold fraudulent acts, secured each loan, the specified unlawful activity, bank fraud, was completed.  Whatever was done with the proceeds of each loan was the start of a new activity, a separate crime if done with the requisite intent."  *Id.* at 669.

Defendant's convictions are similar to those in *Abuhouran*.  In this case, the "unlawful activity" that generated the laundered "proceeds" was mail and wire fraud.  Mail and wire fraud are completed crimes when the mail or wire communication is sent.  *See Yusuf*, 536 F.3d at 187.  Thus, the "essential expenses," *Santos*, 553 U.S. at 528 (Stevens, J.), of mail and wire fraud are costs incurred in sending mail or interstate wire communications, not, as defendant argues, the expense of maintaining the scheme or artifice to defraud.[1]  By paying the expenses of his artifice or scheme to defraud, through payment of salaries and rent, defendant laundered profits from completed mail and wire fraud to facilitate future crimes.[2]  *See Santos*, 553 U.S. at 520 (Scalia, J.) ("[T]he factfinder will not need to consider gains, expenses, and losses attributable to other

---

[1] Indeed, under defendant's interpretation of *Santos*, the proponent of a pyramid scheme charged with mail or wire fraud could never be prosecuted for money laundering because a pyramid scheme is premised on making the artifice or scheme to defraud appear profitable when, in fact, it is not.

[2] The Court found no reference in the trial transcript to any argument of the government that defendant's payment of mailing expenses or wire transfer fees constituted money laundering.

instances of specified unlawful activity, which go to the profitability of some entire criminal enterprise.  What counts is whether the receipts from the charged unlawful act exceeded the costs fairly attributable to it.").  Thus, defendant's Habeas Corpus Petition Under 28 U.S.C. § 2241 is denied with respect to his remaining claim, Ground Three.

      An appropriate order follows.